DOYLE et al., Appellants,

v.

SCHOTT, Exrx., Appellee;

**Nichols, Appellant.**

[Cite as *Doyle v. Schott* (1989), 65 Ohio App.3d 92.]

Court of Appeals of Ohio,
Hamilton County.

No. C–880525.

Decided Oct. 18, 1989.

*John F. Kirwan,* for appellants.

*Lindhorst & Dreidame, Leo J. Breslin,* and *James F. Brockman,* for appellee.

*Per Curiam.*

This cause came on to be heard upon an appeal from the Probate Division of the Court of Common Pleas of Hamilton County.

Plaintiffs-appellants, Peter Doyle and Joseph Doyle, and defendant-appellant, Hugo Nichols, Jr., are the grandchildren and only heirs of Marie Nagel. They appeal from the trial court's order in a will contest granting summary judgment in favor of the defendant-appellee and sole beneficiary under their grandmother's will, Margaret Schott. In their single assignment of error, the appellants contend that the probate court erroneously granted the appellee's motion for summary judgment since genuine issues of material fact exist concerning their grandmother's testamentary capacity to execute the will and her execution of the will while subject to undue influence. Appellants' assignment of error is not well taken.

On July 14, 1981, the probate court admitted to probate what is purportedly the will of Marie S. Nagel, dated December 20, 1978. In making the appellee, who was Nagel's sister-in-law, Nagel's sole beneficiary, the will provided:

"I have made no provision for the natural and adopted children of my deceased daughter, Marie Lynne Doyle Nichols."

This identical provision was in her earlier wills executed on March 12, 1977, and March 16, 1977. On November 10, 1981, appellants filed a will contest in the Hamilton County Probate Court. Upon completion of discovery, the appellee filed a motion for summary judgment which the probate court granted for the reasons expressed in its comprehensive opinion entered May 23, 1988.

The test governing the propriety of summary judgment under Civ.R. 56 is set forth in *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

In presenting a motion for summary judgment, the moving party must prove that no genuine issue of fact remains for trial. When the moving party has met its burden, the opposing party must take affirmative action to defeat the motion by showing a genuine issue for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Benjamin v. Deffet Rentals* (1981), 66 Ohio St.2d 86, 20 O.O.3d 71, 419 N.E.2d 883.

The order admitting a will to probate is *prima facie* evidence of its validity as provided in R.C. 2107.74. See *Hane v. Kintner* (1924), 111 Ohio St. 297, 301, 145 N.E. 326, 329. Therefore, appellants had the burden to offer evidence suggesting that genuine issues of material fact existed regarding lack of testamentary capacity and undue influence. *Gannett v. Booher* (1983), 12 Ohio App.3d 49, 12 OBR 190, 465 N.E.2d 1326.

One's power to dispose of property by will is exclusively a legislative creation, R.C. 2107.02, available to those persons "of the age of eighteen years, or over, [of] sound mind and memory, and not under restraint * * *." The criteria in determining the existence of testamentary capacity include whether the testator had sufficient mind and memory to: (1) understand the nature of the business in which he was engaged, (2) comprehend generally the nature and extent of his property, (3) know the identity of those who had natural claims upon his bounty, and (4) appreciate his relation to the members of his family. *Niemes v. Niemes* (1917), 97 Ohio St. 145, 119 N.E. 503.

The evidence is uncontradicted that the testatrix, Marie S. Nagel, suffered from long-standing alcohol abuse. Her cantankerous personality manifested itself in episodes of public tantrums and verbal abuse toward the appellants and other members of her family while she was drinking. The principal thrust of the appellants' claim that their grandmother lacked the testamentary capacity to execute the December 20, 1978 will depends upon the deposition of Dr. George T. Harding, a psychiatrist who treated the testatrix at Harding Hospital between June 3 and October 12, 1970, pursuant to a ninety-day court referral for alcoholism. Dr. Harding described the testatrix as self-centered and manipulative. Upon her discharge in 1970, Dr. Harding diagnosed Nagel's problem as a "personality disorder" which he described as follows: "Psychotic depressive reaction with chronic alcoholism and passive aggressive explosive paranoid tendencies." Although Dr. Harding did not treat the testatrix after her discharge in 1970, following his review of the 1978 nurses' notes from St. Margaret Hall, a house for senior citizens and the testatrix' residence from May 8, 1976 until her death, this colloquy appears in the deposition:

"Q. And, Doctor, do you have an opinion to a reasonable degree of medical certainty whether Marie Nagel's judgment would have been substantially impaired in March of 1977 considering all—assuming all the facts as I have related them in the question?

"A. There would be periods of increased impairment and there would be periods when she might show temporary improvement, depending on whether she had been disciplined so that she did not drink alcohol to excess during that time."

■ ▮ The probate court correctly concluded that this evidence failed to address any of the four criteria relating to the determination of testamentary capacity. Evidence of the testatrix' alcohol abuse does not by itself create an inference of testamentary incapacity, *Green v. Green* (1949), 86 Ohio App. 285, 41 O.O. 289, 90 N.E.2d 170, particularly in light of the identical provision excluding her grandchildren appearing in the two 1977 wills. Even Dr. Harding testified that the testatrix was not mentally ill, was of above-average intelligence with a good memory other than short-term memory infirmities created by alcohol, and did indeed manage her day-to-day affairs.

▮ Turning next to the claim of undue influence, we hold that the evidence offered by appellants establishes neither direct influence actually exerted against the testatrix by Schott, nor indirect influence as the result of a confidential or fiduciary relationship. Under Ohio law, to invalidate a will because of undue influence, the person contesting the will must establish the following: (1) a susceptible testator, (2) the opportunity for another to exert the influence, (3) the fact of influence, and (4) the improper result of such

influence. *West v. Henry* (1962), 173 Ohio St. 498, 20 O.O.2d 119, 184 N.E.2d 200.

The only evidence in the record possibly suggestive of undue influence is: (1) the December 20, 1978 will was produced for the testatrix' signature by Schott's employee, Harold Vollrath, at a Christmas party at Schott's residence; and (2) the brother-in-law of the testatrix and of Schott, Joseph J. Schott, speculated that the testatrix did not read the will because he could not imagine that she would sign it. However, the record does not suggest that the testatrix was incapacitated or that she lacked knowledge of the will's contents. In fact, the single difference between the December 20, 1978 will and the March 16, 1977 will was that Schott was named sole executrix rather than co-executrix. Her attorney, without contradiction, testified that the testatrix indicated, prior to executing the March 12, 1977 will, that she was cognizant of her grandchildren as heirs but that she still wanted to leave everything to Schott because Schott had been good to her. Furthermore, Joseph J. Schott acknowledged that he had no knowledge that Schott forced the testatrix to make any will.

We conclude from the record that there was no genuine issue as to any material fact, and since defendant was entitled to judgment as a matter of law, the trial court correctly granted summary judgment. Accordingly the appellants' assignment of error is overruled.

The judgment of the probate court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., UTZ and GORMAN, JJ., concur.