WESTRAY et al., Appellants,

v.

IMPERIAL POOLS AND SUPPLIES, INC. et al., Appellees.

[Cite as *Westray v. Imperial Pools & Supplies, Inc.* (1999), 133 Ohio App.3d 426.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–98–1337.

Decided April 30, 1999.

*Charles V. Contrada, Russell W. Jones* and *Randall C. Dixon,* for appellants.

*Byron S. Choka* and *Camille H. Stewart,* for appellee Imperial Pools & Supplies, Inc.

SHERCK, Judge.

This matter comes to us from a summary judgment issued by the Lucas County Court of Common Pleas, which barred appellant's product liability claims against appellee, the alleged installer of a swimming pool, and Ohio Pool Works, the provider of the pool's new liner.[1] Because the trial court incorrectly concluded that the shallow conditions of the pool were so open and obvious that appellant had assumed the risk of injury when he dove into shallow water, we reverse.

On June 24, 1995, appellant, Gary Westray, attended a party at the home of his sister and brother-in-law, Sandra and Robert Davis. They invited appellant to swim in their backyard pool, which had been installed in 1984 by appellee Imperial Pools for the prior home owner; the Davises purchased the property in 1994.

The pool had a partial in-ground configuration. Its shallow end was approximately four feet deep. The bottom of the shallow part rested on the ground's surface. The deep end dropped to approximately eight feet. To obtain this depth, a hole was dug into the ground with the four sides slanted or sloped toward the center. This was known as a "hopper-style" design.

In April 1995, Ohio Pool Work installed a new liner in the pool. The Davises also installed a diving board at the deep end. Although the pool was originally equipped with a safety rope float device to divide the shallow end from the deep end of the pool, the Davises had removed it.

At his deposition, appellant testified that although he had never been in this pool before, he knew it had a shallow and a deep end. Appellant conceded that even though the above-ground pool in his own backyard was only four feet deep, and carried warnings not to dive, he often dove into it using shallow-angle dives.

---

1. The trial court issued an almost identical judgment awarding summary judgment in favor of Ohio Pool Works, which provided a new pool liner. Ohio Pool Works has not appeared to defend in this appeal.

According to appellant, he walked to the side edge of the pool and stopped at the middle. Although there were some warning signs at the shallow end, there were no such warnings at the middle or deep area of the pool. Appellant claimed he took a minute or two to examine the water. He executed a shallow dive, angled toward the deep end. Appellant injured his head during the dive. As a result of the head injury, appellant is paralyzed from the chest down and confined to a wheelchair.

On March 27, 1996, appellant sued appellee Imperial Pools & Supplies, Inc. and Ohio Pool Works, among others, to recover damages for his injuries. Appellant raised products liability claims for defective design under R.C. 2307.75, defective manufacture under R.C. 2307.74, and failure to warn and negligent representation, both under R.C. 2307.78.

On March 12, 1998, appellee filed its motion for summary judgment, alleging that there were no genuine issues of material fact because all of appellant's claims were barred by the doctrine of "primary assumption of the risk." Appellee argued in the alternative that even if appellant's claims were not barred by assumption of the risk, appellant could not produce evidence to support his four claims.

According to appellee, appellant assumed the risk of injury by diving into shallow water where the danger of striking one's head at the bottom is obvious. Appellee pointed out that appellant was an experienced swimmer who ignored the "no diving" signs in his own pool. Appellee argued that the very fact that appellant executed a shallow dive implied that he was knowingly trying to compensate for the lack of water. Appellee also offered the alleged eyewitness testimony of appellant's son that appellant dove into the shallow end of the pool.

In opposition, appellant acknowledged that he fully recognized the dangers of diving into shallow water. However, he maintained that he thought he was diving into the deep end. Appellant offered the testimony of two experts (whose credentials were strenuously challenged by appellee) that the design of the pool, particularly the sloping "hopper-style" sides in the deep end, was inherently dangerous.

The trial court determined that appellant had assumed a risk of diving into shallow water, which was so obvious appellant must have known or appreciated it, stating:

"[Appellant] was familiar with swimming pools generally, and this one in particular he had seen on numerous occasions. He was an experienced swimmer and diver, as he had swum and dove in his own pool hundreds of times. He was aware that the pool in question contained a deep end and a shallow end, and he knew at which end both were located. He knew that the liner of the pool made it

hard to judge the depth. He was aware that there was a diving board installed in the deep end. He knew that the rope divider was not in place separating the deep from the shallow end. He was aware that the pool lacked depth markings, and he was aware that he, from where he was diving, had to make a shallow dive at a somewhat horizontal angle to avoid hitting the bottom of the pool. He was also aware that he could be injured by diving into a shallow area. All of these things that [appellant] was aware of are factors that demonstrate his assumption of the risk."

The trial court held that this was a "primary assumption of risk," which resulted in appellee "owing no duty of care" to appellant because of the open and obvious nature of the conditions of the pool. The court further concluded that even if diving into shallow water is an implied assumption of risk, appellant's negligence was greater than that of appellee.

Appellants now raise the following assignment of error:

"The trial court erred in granting the motions for summary judgment of appellees Imperial Pools & Supplies, Inc. and Ohio Pool Works because (a) the appellees failed to prove beyond all genuine factual dispute that [appellant] Gary Westray voluntarily assumed a known risk of injury, and (b) appellants presented evidence from which reasonable minds could readily conclude that the pool and liner in question were defective."

▆ Civ.R. 56(C) provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated, (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to summary judgment as a matter of law. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. In deciding whether a genuine issue of material fact precludes the grant of summary judgment, a court must adhere to Civ.R. 56(C) and view the evidence in a light most favorable to the nonmoving party. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1126–1127.

▆ We initially note that the trial court erroneously concluded that appellant's assumption of the risk barred appellant's product liability claims. " '[A]ssumption of the risk is (1) consent or acquiescence in (2) an appreciated or known (3) risk.' "[2] *Benjamin v. Deffet Rentals* (1981), 66 Ohio St.2d 86, 89, 20 O.O.3d 71, 73, 419 N.E.2d 883, 886, quoting *Wever v. Hicks* (1967), 11 Ohio St.2d 230, 234,

---

2. Both cases were overruled by R.C. 2315.19 to the extent the Ohio Supreme Court determined that implied assumption of the risk is merged with contributory negligence. *Anderson v. Ceccardi* (1983), 6 Ohio St.3d at 110, 112, 6 OBR 170, 172–173, 451 N.E.2d 780, 782; see footnote 3, *infra*.

40 O.O.2d 203, 205–206, 228 N.E.2d 315, 318. The trial court's decision had the effect of determining that appellant assumed the risk of defective design, defective manufacture, failure to warn, and negligent representations because he dove into the shallow end of the pool, which is an open and obvious danger. Whether appellant dove into the shallow end or deep end was disputed and remains a question of fact. By assuming appellant dove into the shallow end, the trial court not only decided a disputed issue of fact, but also incorrectly limited the question presented to it for summary judgment.

While diving into shallow water may be inherently dangerous, that was not the issue facing the trial court in deciding whether summary judgment should be granted. The issue was not whether appellant knew diving into shallow water was dangerous; rather, the issue was whether appellant had reason to know he was diving into shallow water and, knowing that danger, proceeded anyway to voluntarily assume that risk.

Appellant's claims were premised upon the proposition that the pool was so defective in design, manufacture, warning, or representation that a user diving from the pool's middle toward the deep end would not know there was a risk of injury from the proximity of the shallow end or the sloping sides in the deep "hopper style" end of the pool. If the question of fact were resolved in appellant's favor, *i.e.*, that he did not know he was diving into shallow water or toward sloping sides in the deep end because of the illusion created by the alleged defects, then he was, arguably, not aware of a defect and it was not open and obvious.

Consequently, appellant could not have voluntarily assumed a known risk of injury from the alleged product defects. It cannot be said with certainty that appellant was aware of the risks involved in diving into the pool from the middle, if he did indeed dive from the middle. See *Stanton v. Miller* (1990), 66 Ohio App.3d 201, 204, 583 N.E.2d 1080, 1081–1082. This remains a question for the trier of fact to decide.

Similarly, the trial court erred by determining that no evidence was presented to establish that the product was defective because the conditions of the pool could be "identified by merely observing the pool." Again, the premise of appellant's suit was that the depth of the pool was illusory because of design and manufacturing defects and insufficient warnings of those condition. Whether the conditions of the pool were observable was a question of fact that should not have been disposed of by summary judgment.

■ Further, the trial court incorrectly concluded that the doctrine of *primary* assumption of the risk barred appellant's products liability claims. Whether an

assumption of risk is labeled primary or implied determines whether it is a complete or partial defense to a personal injury claim.

■ Primary assumption of the risk includes risks that are so inherent in an activity they cannot be eliminated, such as being a spectator at a baseball game. *Collier v. Northland Swim Club* (1987), 35 Ohio App.3d 35, 37, 518 N.E.2d 1226, 1227–1228. "The effect of raising primary assumption of the risk as a defense is to state, as a matter of law, that defendant owes no duty to plaintiff." *Id.* Primary assumption of risk is a complete defense against claims of *negligence*. *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 113–114, 6 OBR 170, 173–174, 451 N.E.2d 780, 782–784.

■ Under R.C. 2315.19, *implied* assumption of risk is not necessarily a complete defense to *negligence* claims.[3] Under R.C. 2315.20(B), *implied* assumption of the risk may be a complete defense to *strict liability defective product* claims. Implied assumption of the risk includes risks that are so obvious in a situation that a person must have known and appreciated the risk. *Collier*, 35 Ohio App.3d at 37, 518 N.E.2d at 1228. "[D]efendant owes to plaintiff some duty, but it is plaintiff's acquiescence in or appreciation of a known risk that acts as a defense to plaintiff's action." *Id.* Although implied assumption of risk generally raises factual questions that should be resolved by a trier of fact, summary judgment may be appropriate. *Collier*, 35 Ohio App.3d at 37, 518 N.E.2d at 1228; *Benjamin v. Deffet Rentals*, 66 Ohio St.2d at 88–89, 20 O.O.3d at 72–73, 419 N.E.2d at 885–886.

■ Three of appellant's claims were based on the strict liability standard of products liability, not negligence. Regardless of whether it is primary or implied, we have previously held that an "otherwise strictly liable defendant has a complete defense if a plaintiff voluntarily and knowingly assumed the risk arising from a defect in a product." *Sapp v. Stoney Ridge Truck Tire* (1993), 86 Ohio App.3d 85, 97, 619 N.E.2d 1172, 1179, citing *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 282, 31 OBR 559, 563–564, 511 N.E.2d 373, 377–378. "[T]he user or consumer must discover the defect, be aware of the danger and proceed to unreasonably make use of the product." *Id.* See R.C. 2307.75(E). However, a plaintiff's negligent "failure to discover a defect in a product or to guard against the possibility of the existence of the defect" is not a defense. *Id.*

In rendering its decision, the trial court incorrectly relied on *Allums v. Gillenwater* (Apr. 25, 1996), Cuyahoga App. Nos. 68870 and 68871, unreported,

---

3. Implied assumption of the risk sometimes overlaps contributory negligence. *Anderson v. Ceccardi*, 6 Ohio St.3d at 112, 6 OBR at 172–173, 451 N.E.2d at 782 (defense of implied assumption of risk is merged with defense of contributory negligence under R.C. 2315.19).

1996 WL 199846, to conclude that appellant's conduct of diving into shallow water was a primary assumption of the risk. The *Allums* court did not determine whether diving into shallow water was a primary or implied assumption of the risk. Further, the *Allums* court was evaluating whether primary, as opposed to implied assumption of risk, when merged with contributory negligence, was a defense against a *negligence* claim for failure to warn of a product's defects.

 To bar appellant's products liability claims on the basis of "primary assumption of risk" implies that a pool is inherently and unavoidably dangerous. While diving into the shallow end of a pool may be an inherently dangerous *activity*, that does not mean that a pool that is shallow in whole or in part is an inherently dangerous *product*.

The trial court's reliance on *Allums*'s analysis of assumption of risk, and comparative negligence, for a negligent failure-to-warn claim resulted in erroneously applying comparative negligence to appellant's strict liability products claims. The trial court incorrectly determined, in the alternative, "[e]ven assuming that diving into shallow water is implied assumption of risks the Plaintiff's negligence * * * is clearly greater than the combined negligence of the Defendants."

Accordingly, appellants' assignment of error is well taken.

The judgment of the Lucas County Court of Common Pleas is reversed as to all claims raised by appellants. This cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK and PIETRYKOWSKI, JJ., concur.